**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**NO. 25-60424**

---

**UNITED STATES OF AMERICA**
**Plaintiff-Appellee**

**V.**

**CLEVELAND ANDERSON; RUDOLPH M. WARNOCK, JR.,**
**Defendants-Appellants**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**CASE NO. 3:21-CR-130-2**

---

# INITIAL BRIEF OF APPELLANT
# CRIMINAL APPEAL

---

**Michael V. Cory, Jr.**
**Danks Miller & Cory, PA**
**213 S. Lamar St.**
**Jackson, MS 39201**
**601.957.3101 (Tel)**
**601.957.3160 (Fax)**
**Mississippi Bar No. 9868**
**Attorney for Appellant/Defendant**

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following individuals may have an interest in the outcome of this case. I make these representations in order that the members of this Court may evaluate possible disqualifications or recusals.

| | |
|---|---|
| District Judge: | Honorable Kristi H. Johnson |
| Appellant: | Cleveland Anderson |
| Defense Counsel: | Damon R. Stevenson (Trial) |
| Defense Counsel: | Michael V. Cory Jr. (Appeal) |
| U.S. Department of Justice | Jordan Dickson |
| Assistant U.S. Attorney for the Southern District of Mississippi | Kimberly Taft Purdie<br>Theodore Mark Cooperstein |

/s/ Michael V. Cory Jr.
Michael V. Cory Jr.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, counsel respectfully submits that oral argument would substantially assist the Court. This appeal presents one substantial issue warranting argument: whether a district court abuses its discretion under Federal Rule of Criminal Procedure 11 by rejecting a guilty plea on scienter grounds more demanding than the elements later submitted to the jury.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ............................................i

STATEMENT REGARDING ORAL ARGUMENT .......................................ii

TABLE OF AUTHORITIES ........................................................................v

STATEMENT OF JURISDICTION .............................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............................2

STATEMENT OF THE CASE .....................................................................3

A. Nature of the Case .....................................................................3

B. The Charged Scheme ..................................................................3

C. Course of Proceedings ................................................................6

D. Mr. Anderson's Three Plea Attempts ..........................................7

SUMMARY OF ARGUMENT ....................................................................11

ARGUMENT AND AUTHORITIES ...........................................................14

I. The District Court Erred in Rejecting Anderson's Guilty Plea ......14

II. Anderson's 84-Month Consecutive Sentence is Substantially Unreasonable ........................................................................19

III. The Verdicts Are Unsupported by Sufficient Evidence .................26

CONCLUSION ........................................................................................31

CERTIFICATE OF SERVICE ...................................................................33

CERTIFICATE OF COMPLIANCE ............................................................34

# TABLE OF AUTHORITIES

## Cases

*United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)........................26

*Gall v. United States*, 552 U.S. 38, 51 (2007)........................................ 19

*McCoy v. United States*, 363 F.2d 306, 307 (D.C. Cir. 1966) .................... 16

*North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) ............................... 16

*Santobello v. New York*, 404 U.S. 257, 262 (1971) ....................................15

*U.S. v. Bolton*, 908 F.3d 75 (5th Cir. 2018)............................................ 27

*United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971).................. 16

*United States v. Candia*, 454 F.3d 468, 473 (5th Cir. 2006) ......................20

*United States v. Delgado*, 984 F.3d 435, 449 (5th Cir. 2021)...................... 9

*United States v. Gadison*, 8 F.3d 186, 189 (5th Cir. 1993)........................ 27

*United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996)........................... 27

*United States v. Hamilton*, 46 F.4th 389, 398 (5th Cir. 2022).................... 9

*United States v. Martinez*, 486 F.2d 15, 20–21 (5th Cir. 1973) ..................15

*United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998) ......................26

*United States v. Resio-Trejo* ........................................................................ 27

*United States v. Rider*, 94 F.4th 445, 461 (5th Cir. 2024) .........................23

*United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006)...........26

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).........................15

*United States v. Smith*, 417 F.3d 483, 486 (5th Cir. 2005)........................ 14

*United States v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996)............................ 14

**Statutes**

§ 2B1.1(b)(1)(J).......................................................................................... 21

§ 3553(a)..........................................................................................20, 25, 26

§ 3553(a)(1) ...................................................................................................24

§ 3553(a)(2)(C).............................................................................................22

§ 3553(a)(6)..................................................................................................23

§ 3584(b) ..............................................................................................25, 26

§ 5G1.2(d) ....................................................................................................25

§ 5K1.1 .........................................................................................................24

18 U.S.C. § 3231.............................................................................................vii

18 U.S.C. § 3553(a) ........................................................................................32

18 U.S.C. § 3584(b)...................................................................13, 21, 24, 26

26 U.S.C. § 7201 ................................................................................................2

3553(a) ..........................................................................................................24

USSG § 2C1.1(b)(2)...................................................................................... 21

USSG § 3D1.2(b)...........................................................................................24

USSG § 5G1.2(b)...........................................................................................25

USSG § 5G1.2(c) ...........................................................................................25

USSG § 5G1.2(d) .......... 13, 26, 32

**Rules**

Fed. R. App. P. 4(b)(1)(A) .......... 2

Fed. R. Crim. P. 11(b) .......... 16

## JURISDICTIONAL STATEMENT

### 1. Subject Matter Jurisdiction in the District Court.

This case arose from the prosecution of an offense against the laws of the United States of America. The district court had jurisdiction under 18 U.S.C. § 3231.

### 2. Jurisdiction in the Court of Appeals.

This case is a direct appeal from a guilty verdict in the U.S. District Court for the Southern District of Mississippi, Northern Division. After a multi-day trial, the jury found Mr. Anderson guilty on Count 1, Conspiracy to commit bribery, 18 U.S.C. § 371, and on Count 2, Travel Act violations, 18 U.S.C. § 1952.[1]

### 3. Timeliness.

The Judgment was filed on December 11, 2025. The Appellant's previous counsel filed a Notice of Appeal on August 11, 2025. An Amended Notice of Appeal was filed on December 21, 2025, in compliance with Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction over the appeal under 28 U.S.C. §1291 and 18 U.S.C. §3742.

[1] ROA. 571-72.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court abused its discretion by rejecting Anderson's guilty plea.
2. Whether Anderson's 84-month consecutive sentence is substantively unreasonable.
3. Whether the evidence is legally sufficient to sustain the conspiracy convictions for federal-program bribery and Travel Act violations.

## STATEMENT OF THE CASE

A. Nature of the Case

This is an appeal from the conviction following a jury trial of Cleveland Anderson, a then 65-year-old first-time offender, on two counts of conspiracy. Specifically, Mr. Anderson was convicted on Count 1 of conspiracy to commit bribery and on Count 2 of conspiracy to violate the Travel Act. Thereafter, he was sentenced to consecutive 42-month terms, totaling 84 months (24 months more than the maximum sentence had the trial court accepted his guilty plea).

B. The Charged Scheme

The Defendant, Rudolph M. Warnock, Jr. ("Warnock"), was the "wealthy owner of" Warnock & Associates, a civil engineering firm. Warnock bribed, or as the government described, "bought the power of three public officials: Cleveland Anderson, Eric Gilkey and Andrew Grant." The purpose of Warnock's bribes was to secure contracts for Warnock & Associates from the City of Canton, Mississippi, and the Canton Municipal Utility Agency ("CMU"). Warnock's scheme netted him over "one million dollars" and would have netted another six million dollars had he been

successful in getting all his invoices paid.[2] Warnock directed and financed his bribery scheme. Warnock was its principal beneficiary.

The Defendant, Eric Gilkey ("Gilkey"), was an alderman for the City of Canton, who was recruited into the scheme by Warnock. Warnock paid and directed Gilkey. Gilkey pled guilty to one count of conspiracy to commit bribery and was a cooperating government witness at trial. The Defendant, Andrew Grant ("Grant"), was another alderman for the City of Canton, who was also recruited into the scheme by Warnock. Warnock paid and directed Grant. Grant likewise pled guilty to conspiracy to commit bribery and was a cooperating government witness.[3]

The Defendant, Cleveland Anderson ("Anderson"), was recruited by Grant and Gilkey. Grant and Gilkey had Anderson appointed as one of five commissioners of the Canton Municipal Utilities agency ("CMU"). Anderson, in turn, accepted payments from Warnock paid through Grant and Gilkey.[4]

Grant and Gilkey were Warnock's enablers in securing contracts. The Canton Board of Aldermen exercised authority over CMU, including the appointment of CMU Board of Commissioners members. Grant and Gilkey

---

[2] ROA. 3454: 1-2 (Warnock was paid $1,137,620.31), 3483: 21-25, 3484: 1-5 (Warnock's unpaid invoices totaled $6,677,374.87).
[3] ROA. 3138: 20-23.
[4] ROA. 2860: 12-25, 2861: 1-25, 2862: 1-14.

had the power to control contract awards. They had the power to appoint favorable CMU commissioners, such as Anderson. In return, Warnock provided Grant and Gilkey with an extraordinarily valuable stream of benefits, including private plane travel, trips to New Orleans, Washington, D.C., Chicago, and Gulf Shores, Alabama; cash payments; NBA and NFL tickets; Beyoncé tickets; and entertainment at the Penthouse Club in New Orleans.[5] As the governments describe these benefits to the jury, Warnock's money "allowed Grant and Gilkey to live like they were millionaires."[6]

In contrast, Anderson's involvement started after the scheme was already underway and was much more limited. At the time Anderson was appointed to the CMU commission on June 7, 2016, Warnock Engineering already had a contract with CMU.[7] Anderson's power as a CMU commissioner was structurally limited. Under CMU's internal processes, to get a vendor invoice approved, the first step was to secure the appropriate department manager's review and approval. Once this sign-off occurred, the invoices were sent to accounts payable. Then they were placed on the claims docket. Only after the invoices were placed on the claim docket did

[5] ROA. 2992: 15-22, 2993, 3001-3002, 3017-3018, 3195, 3199: 11-14, 3668: 4-13 ("paying for champagne and steaks and God knows what else at the Penthouse Club for Andrew Grant and Eric Gilkey.")
[6] ROA. 2863: 9-19.
[7] ROA. 3024: 24-15, 3042-3043.

the full CMU Board of Commissioners have the power to approve payment. Anderson did not have unilateral authority to hire Warnock & Associates or to approve its invoices.[8] Anderson's benefits for participating in the scheme were also much more limited than what Grant and Gilkey got. Warnock's payments to Anderson totaled $6,500.[9] The only other benefits were Beyoncé concert tickets and box seats at a New Orleans Saints game.[10]

By December 2016, approximately six months after being appointed to the CMU Board, the Warnock-Anderson relationship had ended. Anderson led efforts to terminate Warnock as the CMU engineer. Warnock responded by seeking Anderson's removal from the CMU Board. This included arranging a special meeting, forwarding Grant a resolution terminating Anderson's appointment, and securing the votes to terminate Anderson's appointment.[11]

C. Course of Proceedings

On December 8, 2021, a federal grand jury returned a sealed indictment charging Rudolph M. Warnock, Jr., Cleveland Anderson, Andrew Grant, and Eric Gilkey with conspiracy to commit bribery and

---

[8] ROA. 3104: 22-25, 3108, 19-23.
[9] ROA. 2976: 1-17, 3185, 3-6, 3186, 3187: 18-21.
[10] ROA. 3598: 21-14, 3599: 14-16, 3600: 5-21.
[11] ROA. 3087: 10-12, 2981-2980.

related offenses arising from the public corruption scheme described above. The case was initially assigned to District Judge Henry T. Wingate.

The Federal Public Defender was appointed to represent Anderson. In December 2022, Damon R. Stevenson was substituted as Anderson's counsel by CJA appointment. Grant and Gilkey entered into plea agreements with the government and cooperated with the prosecution.

On May 22, 2025, Judge Wingate entered an Order of Recusal in the case as to all defendants. On June 2, 2025, the case was reassigned to District Judge Kristi H. Johnson. Judge Johnson set a firm trial date of July 7, 2025. Jury selection commenced on July 7, 2025. The trial proceeded over five days with the jury returning guilty verdicts on all Counts (Rudolph M. Warnock, Jr.: Guilty on Counts 1, 2, 3, and 4; Cleveland Anderson: Guilty on Counts 1 and 2).

At sentencing, Warnock, the mastermind and major beneficiary of the scheme, received a 144-month sentence. Anderson was sentenced to 84 months (42 months on Count 1 and 42 months on Count 2, to run consecutively). Grant and Gilkey, the primary recipients of bribes paid by Warnock, each received a sentence of 46 months.

D. <u>Mr. Anderson's Three Plea Attempts</u>

Between March and September 2023, Anderson attempted to plead

guilty to Count 1 under a plea agreement three times. A successful plea would have capped Anderson's potential sentence at 60 months. Each time Anderson attempted to plead guilty, he confirmed that he wished to plead guilty, that he understood the charges, and that he was not being coerced. However, each attempt to plead guilty was rejected by the court.

The first change-of-plea hearing was on March 16, 2023. Anderson's plea agreement provided, among other things, that the government would dismiss Count 2. Anderson appeared under oath, confirmed his educational background, and affirmatively stated that he wished to plead guilty.[12] The government read a detailed factual basis that covered all of the elements (Anderson was a CMU Board of Commissioners member who voted in favor of contracts for Warnock's engineering firm while receiving $6,500 in payments, routed through Aldermen Grant and Gilkey, and attended an NFL game, a Beyoncé concert, and meals in New Orleans, all paid by Warnock).[13] When asked if he disagreed with any of the factual basis detailed by the government, Anderson said "No."[14]

The second change-of-plea hearing was held on June 12, 2023.[15] Pursuant to the court's directive, the government submitted a six-page

[12] ROA. 3732: 3–5.
[13] ROA. 3732: 59-64.
[14] ROA. 3732: 65.
[15] ROA. 3733: 1 (Doc. 158).

factual analysis citing governing Fifth Circuit authority: *United States v. Hamilton*, 46 F.4th 389, 398 (5th Cir. 2022) (no verbally explicit agreement required; payment may precede or follow the official act as influence or reward); *United States v. Delgado*, 984 F.3d 435, 449 (5th Cir. 2021) (same). This document detailed Anderson's votes to hire Warnock, to fire CMU staff at Warnock's direction, and to award emergency no-bid contracts, all while he received $6,500 in payments and other non-cash benefits.[16] Anderson confirmed these factual allegations.[17] In trying to explain himself during the lengthy back and forth with the court, Anderson agreed that the law says that he had culpability, "so I agree with it."[18] At one point, Anderson characterized his own role as "unethical."[19] The court identified this statement as a concern requiring further clarification.[20] The court then declined to accept the plea and identified four categories of supplemental information it required: (1) resolution of the "unethical vs. illegal" language in the factual document; (2) an individualized breakdown of benefits attributable specifically to Anderson; (3) information about a Warnock invoice allegedly submitted for the New Orleans trip; and (4) a sealed cooperation letter from the government.

---

[16] ROA. 3733: 14–15, 37-38.
[17] ROA. 3733: 31–61.
[18] ROA. 3733: 53.
[19] ROA. 3733: 55–59.
[20] ROA. 3733: 59–60.

The third change-of-plea hearing was on September 13, 2023.[21] Defense counsel explained that the prior failed attempts were attributable to Anderson's difficulty with legal terminology, not to his denial of guilt. Anderson confirmed that he was competent, understood the charges, had read and signed the plea agreement and sealed supplement, and wished to plead guilty.[22] Anderson testified that: "I knew the difference between right and wrong, Your Honor, but … I wasn't aware that the influence … would be considered as bribery or conspiracy until my lawyer explained it to me."[23] Defense counsel clarified that Anderson "acknowledges that the behavior was wrong and he knew it at the time it was wrong to be improperly influenced…."[24] Anderson then twice confirmed "[t]hat is correct," and "what Mr. Stevenson just said, that is exactly what I feel and that's exactly what I'm here today to plead to."[25]

The court then gave Anderson a lengthy explanation of the scienter element of bribery.[26] Both the court and the government agreed that Anderson only needed to have known that his conduct was unlawful.[27] The court asked defense counsel: "Is your client prepared to say that he acted

[21] ROA. 3734: 1 (Doc 156).
[22] ROA. 3734: 5–9, 22–26.
[23] ROA. 3734: 6.
[24] ROA. 3734: 6–7.
[25] ROA. 3734: 7.
[26] ROA. 3734: 14–55.
[27] ROA. 3734: 50–51.

corruptly?" Anderson jumped in and immediately answered the question with: "Yes."[28] The court then conducted further questioning. Anderson confirmed that he was a CMU agent and that CMU received more than $10,000 in federal funds annually.[29] But when the court framed the next questions as whether Anderson had "corruptly" received money, "corruptly" voted to hire Warnock, or "corruptly" voted to award contracts, Anderson answered "No, sir" to each.[30] Anderson then clarified, "I did not act with the intent to violate the law." Anderson never claimed to be innocent or not guilty. He never asked for a trial. He never attempted to withdraw from the plea.[31] But the court still concluded that Anderson had "denied the essential elements that he acted corruptly" and rejected this final plea attempt.[32] Thereafter, the case was set for trial, and Anderson was convicted on both counts. He was then sentenced to consecutive terms of 42 months on each count for a total sentence of 84 months.

## SUMMARY OF ARGUMENT

The district court abused its discretion by rejecting Anderson's guilty plea. First, the court applied a legally erroneous scienter standard. The court correctly defined "corruptly" as acting "intentionally with an unlawful

[28] ROA. 3734: 57.
[29] ROA. 3734: 58–59.
[30] ROA. 3734: 59–60.
[31] ROA. 3734: 56.
[32] ROA. 3734: 61–62, 2118 (Doc. 70.)

purpose." Anderson admitted that his conduct was wrong and that he knew at the time it was wrong to be improperly influenced. The court nonetheless rejected the plea because Anderson answered "No" to subsequent leading questions that used the legal label "corruptly." A court abuses its discretion when it defines a standard and then applies it inconsistently.

Second, the court set a higher threshold for accepting Anderson's plea than the law required to convict him at trial. The jury instructions did not list "corruptly" as a discrete element. A district court cannot demand more to accept a plea of guilt than the law requires to prove guilt at trial. That irregularity is itself an error of law.

If the convictions stand, the sentence imposed cannot. The district court made a series of on-the-record findings irreconcilable with an 84-month sentence. The sentence also inverted the relative culpability. Warnock, the organizer, financier, and principal beneficiary of the scheme, received a 144-month sentence. Anderson received 84 months. Grant and Gilkey, the operational architects of Anderson's appointment, who “lived like millionaires” on Warnock’s money, received 46 months each. The evidence clearly showed that Anderson was the least culpable participant.

The consecutive structure compounded the error. The court announced 42 consecutive months on each count with no specific reasoning

addressed to USSG § 5G1.2(d) or 18 U.S.C. § 3584(b). Counts 1 and 2 arose from the same scheme and the same overt acts. Stacking the counts after a downward variance resulted in 42 additional months of imprisonment, unsupported by the court's stated reasons. The proper remedy is vacatur and remand for resentencing with instructions to consider concurrent terms.

A conspiracy to commit federal-program bribery requires proof beyond a reasonable doubt that the defendant knowingly and willfully joined an agreement whose unlawful purpose was a corrupt quid pro quo. The Travel Act conspiracy in Count 2 was entirely dependent on the same corrupt agreement. The record does not support a finding of knowing participation in such an agreement.

The government’s two cooperating witnesses disclaimed personal knowledge of any corrupt agreement on Anderson's part. Gilkey testified that he "never heard Cleveland Anderson promise or do anything in exchange for something." Before cooperating with the FBI, Grant told the FBI that he had never been in a room where Anderson tried to solicit a bribe, and he confirmed at trial that he had no personal knowledge of Warnock paying Anderson directly. Warnock's own representative at CMU meetings, Calvin Harris, testified as a government witness that it was

Warnock's custom to give things to people without expecting anything in return.

Warnock's contract with CMU predated Anderson's appointment. Anderson was one of five votes on a board whose approvals came at the end of a multistep administrative process he did not control. He had no unilateral authority over hiring or payment of Warnock. And by December 2016, Anderson was leading efforts to terminate Warnock, which prompted Warnock to retaliate by engineering Anderson's removal from the Board. That adversarial breakdown is inconsistent with continuing participation in a bribery conspiracy. Based on these facts, this Court should reverse and render judgments of acquittal, or, in the alternative, vacate and remand for a new trial because the verdicts are against the great weight of the evidence. Fed. R. Crim. P. 33.

## ARGUMENT AND AUTHORITIES

### I. The District Court Erred in Rejecting Anderson's Guilty Plea.

#### A. Standard of Review

Appellate review of a district court's refusal to accept a guilty plea is for abuse of discretion. *United States v. Smith*, 417 F.3d 483, 486 (5th Cir. 2005); *United States v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996). A district court abuses its discretion when it bases its decision on "an error of law or a

clearly erroneous assessment of the evidence." *Smith*, 417 F.3d at 486–87. Both grounds are present here. Where the error is one of law, review is de novo. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995).

B. Pertinent Authority

Although a defendant has no absolute right to have a guilty plea accepted, *Santobello v. New York*, 404 U.S. 257, 262 (1971), "a court must exercise sound discretion in determining whether or not to reject a plea." *Wild*, 92 F.3d at 307. A district court's discretion "is limited only by the procedural requirements of Rule 11." *Id.* at 308. Rule 11 is not designed to discourage acceptance of guilty pleas "merely because the trial judge is uneasy or apprehensive over the possibility of a subsequent collateral attack." *United States v. Martinez*, 486 F.2d 15, 20–21 (5th Cir. 1973).

Rule 11 requires only three things: that the plea is voluntary, that the defendant understands the charges and consequences, and that there is a factual basis for the plea. Fed. R. Crim. P. 11(b). The rule does not require a defendant to recite legal labels. As this Court recognized in *Martinez*, "[s]o long as the trial judge is convinced by the record before him that a guilty plea is not coerced, a further showing that the plea is knowingly entered and that there exists sufficient evidence of guilt will satisfy the requirements of Rule 11." 486 F.2d at 21.

Rule 11's factual basis requirement may be satisfied even where a defendant is unwilling or unable to admit every element of the government's framing personally. The Supreme Court held in *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970), that a court may accept a plea "even in the face of a defendant's unwillingness or inability to admit guilt, where compelling reasons are present for the entering of a guilty plea, as long as there exists substantial evidence of the defendant's guilt." The factual basis may be drawn from any part of the record.

Where the plea “is made voluntarily and with an understanding of the nature of the charge, the plea should not be refused without good reason." *McCoy v. United States*, 363 F.2d 306, 307 (D.C. Cir. 1966). A trial judge "must seriously consider accepting a tendered plea if it is fully satisfied, even though the defendant asserts his actual innocence." *United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971). Where rejection is not for "good reason," it is reversible error. *Martinez*, 486 F.2d at 20. Where a court wrongly rejects a guilty plea, the remedy is to vacate the resulting conviction and reinstate the plea. *Id.* at 21–22.

C. "Corruptly" Was Not a Discrete Element Submitted to the Jury

The court's reason for rejecting Anderson's plea was that he had

"denied the essential elements that he acted corruptly."[33] That characterization rests on a false premise. "Corruptly" was not a discrete element submitted to the jury for decision. The jury instructions listed the elements the government was required to prove on Count 1 as: (1) an agreement to commit federal program bribery; (2) that Anderson "knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose"; and (3) an overt act in furtherance.[34] The word "corruptly" does not appear among those elements. It appears as a standalone definitional sentence.[35] "An act is corruptly done if it is done intentionally with an unlawful purpose." To convict, the jury did not have to specifically find that Anderson had acted "corruptly." If "corruptly" was not essential enough to appear as a discrete jury element, it cannot be the "essential element" justifying the rejection of the plea. As a result, Anderson was forced to trial on charges he was prepared to admit.

D. <u>Anderson's Admissions Satisfied the Definition of "Corruptly"</u>

Before the specific "corruptly" series of questions, defense counsel told the court that Anderson "acknowledges that the behavior was wrong and he knew it at the time it was wrong to be improperly influenced."

---

[33] ROA. 2118.
[34] ROA. 3572–73.
[35] ROA. 3578.

Anderson confirmed that statement twice: “That is correct,” and “what Mr. Stevenson just said, that is exactly what I feel and that's exactly what I'm here today to plead to.” The court asked defense counsel directly, “Is your client prepared to say that he acted corruptly?” Anderson, before his lawyer could answer, jumped and answered in the affirmative: “Yes.” For these reasons, the court's determination that Anderson had "denied the essential elements" was erroneous.

Anderson submits that the court abused its discretion by disregarding his specific admissions of unlawful activity and denying the plea based on answers to questions that were unnecessary for conviction. The court bears responsibility for this inconsistency. Before the “corruptly” worded question sequence, the court delivered an extended tutorial on the precise legal concept of “corruptly”: its historical derivation, its evolution in Fifth Circuit pattern instructions, and its technical meaning as a term of art. A layperson subjected to that lecture and then asked whether he acted “corruptly” was primed to understand that word as something more exacting than its plain definition. Anderson’s resistance to this label was not a declaration of innocence. It was a semantic confusion of the kind that Rule 11’s record-based standard exists to look past.

E. <u>The Prejudice</u>

The harm from this error is calculable to the month. Count 2 would have been dismissed; the term of imprisonment for Count 1 would have been capped at 60 months; and Anderson would have received credit for a timely plea and potentially for cooperation. Forced to trial, Anderson was convicted and sentenced to consecutive 42-month terms, for a total of 84 months. The error cost Anderson at least 24 additional months of imprisonment.

In *Martinez*, this Court directed the district court on remand to set "aside the jury verdict … and the judgment and sentences thereunder, followed by an adjudication of guilt under [the plea count] upon the basis of the tendered plea of guilty, and not by reason of the jury's verdict," then resentence on the plea count only. *Id*. The same remedy is warranted here. This Court should vacate the judgment and sentence and remand with instructions to accept Anderson's guilty plea to Count 1 and resentence on Count 1 only, consistent with the terms of the plea agreement.

## II. Anderson's 84-Month Consecutive Sentence is Substantively Unreasonable.

### A. Standard of Review

A sentence is reviewed for substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Where the sentence is within a properly calculated Guidelines range, it is

presumptively reasonable, *United States v. Candia*, 454 F.3d 468, 473 (5th Cir. 2006). However, that presumption is rebutted where a non-Guidelines sentence "does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009). A consecutive-sentence determination is reviewed under the same standard. *Candia*, 454 F.3d at 472–73.

B. The District Court Made On-the-Record Findings That Should Have Informed Each Sentencing Determination That Followed

The district court made several findings that are relevant to the § 3553(a) analysis. Those findings inform the arguments that follow in Sections II.C and II.D, because each subsequent sentencing determination was required to reflect them. § 3553(a) (sentencing court "shall consider" the enumerated factors); 18 U.S.C. § 3584(b) (same factors apply to the consecutive-versus-concurrent decision).

The court found that Anderson received the least benefit of the participants. The court specifically stated that: "You received the least amount of money and only participated in one trip…."[36] In announcing the variance, the court reiterated: "Mr. Anderson received the least amount of

[36] ROA. 3720: 16-17.

benefit from the scheme…."[37] In explaining the variance, the court also acknowledged that the guideline loss amount calculation overstated Anderson's culpability. Specifically, the court found "that it is appropriate to vary slightly because of — I don't want to say the overestimated loss amount but the inflated loss amount in the sense that some services were provided."[38] The loss calculation drove an 18-level enhancement under USSG § 2C1.1(b)(2) and § 2B1.1(b)(1)(J) and was the single largest contributor to the offense level of 36. The Presentence Report's loss breakdown is itself revealing: of the $7,997,337.73 total loss, $6,675,374.87 consisted of unpaid invoices.[39]

The court also found that Anderson posed no risk of recidivism. Specifically referencing § 3553(a)(2)(C), "the need to protect the public from further crimes," the court agreed with defense counsel that it was "not a factor that I'm worried about with respect to [Anderson]."[40] Additionally, the court found that Anderson had attempted to withdraw from the scheme, explaining that Anderson "wanted to withdraw from the conspiracy" and "attempted to remove Warnock as CMU engineer in

---

[37] ROA. 3723: 19-20.
[38] ROA. 3723: 5-13.
[39] ROA. 4014: PSR 290 (Doc 242)
[40] ROA. 3722: 14-18.

December of 2016."[41]

Anderson's history and characteristics also supported a variance. The court expressly relied on "the defendant's age, military service, health conditions, and employment record up until this particular offense."[42] The record before the court included Anderson's age (67); his honorable military service at Fort Hood and in Germany; a 100% disability rating from the Department of Veterans Affairs effective June 2024; documented diagnoses of carpal tunnel syndrome, scoliosis, hypertension, depression, and anxiety; and his role as a caregiver for an adult son with serious medical issues and for two grandchildren.[43]

Lastly, the Presentence Report grouped the two convictions into a single course of conduct involving the same victim and the same scheme.[44] The court accounted for some of these findings by varying downward from the 120-month guideline ceiling to 84 months. The argument that follows is that the same findings should have informed two further determinations: the comparison of Anderson's sentence to those of his more culpable co-defendants (Section II.C), and the structural decision to run the two counts of conviction consecutively rather than concurrently (Section II.D). On each

[41] ROA. 3720: 7-15.
[42] ROA. 3723: 14-18.
[43] ROA. 3720-3721.
[44] ROA. 4014, PSR 287.

of those determinations, the record does not reflect that the court applied the findings it made.

C. The Sentence Inverts the Relative Culpability

The court's findings on relative culpability identified Anderson as the least culpable participant in a four-person scheme. Like Grant and Gilkey, Anderson entered into a plea agreement with the government. However, Anderson's plea was improperly rejected. Given these facts, the sentences imposed across that scheme inverted the relative culpability.

Grant and Gilkey each received 46 months. Anderson received 84 months. This Court has held that § 3553(a)(6) addresses national disparities between similarly-situated defendants, not co-defendant disparities standing alone. *United States v. Rider*, 94 F.4th 445, 461 (5th Cir. 2024)(explaining that "district courts need not avoid sentencing disparities between co-defendants who are not similarly situated.") However, this disparity is offered for a different purpose: as evidence that the balance of § 3553(a)(1) and (a)(2) factors produced a result contrary to the district court's own findings on relative culpability. Everything in the record shows that Grant and Gilkey were more culpable than Anderson. Cooperation under § 5K1.1 does not justify the inversion. A § 5K1.1 departure rewards substantial assistance. It does not transform a more

culpable defendant into a less culpable one.

D. The District Court Did Not Address the Consecutive-Sentence Decision Under 18 U.S.C. § 3584(b)

When a district court imposes multiple terms of imprisonment at the same time, the decision whether those terms will run concurrently or consecutively is governed by statute. Section 3584(b) provides that "[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors outlined in section 3553(a)." 18 U.S.C. § 3584(b).

The Presentence Report grouped Counts 1 and 2 under USSG § 3D1.2(b), finding that they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." The grouping reflects the Sentencing Commission's judgment that the two counts represent a single course of conduct for purposes of punishment. Once grouped, the two counts produce a single adjusted offense level and a single “total punishment” determination under USSG § 5G1.2(b). That total punishment is then imposed on each count, with the sentences running “concurrently, except to the extent otherwise required by law.” USSG § 5G1.2(c). Stacking is required under § 5G1.2(d) only “to the extent necessary to produce a

combined sentence equal to the total punishment." When the total punishment exceeds the statutory maximum on any single count, consecutive service is the mechanism for honoring a total-punishment determination that a statutory maximum would otherwise prevent.

When the court has varied downward from the guideline total punishment, the original mechanical predicate for consecutive running under § 5G1.2(d) no longer operates with the same force. The court must explain, with reference to the § 3553(a) factors, why the post-variance sentence should nonetheless be imposed consecutively rather than concurrently. In granting the downward variance, the court referenced its prior § 3553(a) discussion but offered no specific consideration of the structural question § 3584(b) required, i.e., whether the same § 3553(a) factors counseled in favor of, or against, running the two terms consecutively. That question had a different answer than the overall length question, because grouping had already established that the two counts charged a single course of conduct. In this situation, the court's findings uniformly supported concurrent service of the two terms. None supported the additional 42 months of imprisonment that consecutive service produced. A consecutive sentence imposed without consideration of §

3584(b), and counter to the court's own grouping and culpability findings, constitutes clear error in the balancing of the sentencing factors.

### E. Remedy

For the reasons stated, the sentence imposed cannot be reconciled with the district court's own findings or with a proper application of the § 3553(a) factors. The presumption of reasonableness is rebutted under all three *Cook* prongs. This Court should vacate the sentence and remand for resentencing with instructions to (i) consider concurrent rather than consecutive terms on Counts 1 and 2 in light of USSG § 5G1.2(d) and 18 U.S.C. § 3584(b), and (ii) impose a sentence that meaningfully reflects the mitigating findings the district court itself made on the record.

## III. The Verdicts Are Unsupported by Sufficient Evidence.

### A. Standard of Review

When a district court denies a post-trial motion for judgment of acquittal, the appeals court reviews the denial *de novo*. *United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006). “A motion for judgment of acquittal challenges the sufficiency of the evidence to convict.” *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)). A motion for judgment of acquittal is unnecessary where the defendant rests without introducing

evidence. *United States v. Resio-Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995)

On appeal, the appeals court "owe[s] great deference" to the jury's verdict. *United States v. Gray*, 96 F.3d 769, 772 (5th Cir. 1996). The preserved challenges as to the sufficiency of the evidence are reviewed de novo, but the court is highly deferential to the verdict. *U.S. v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018).

When reviewing the sufficiency of the evidence, the evidence, whether circumstantial or direct, is viewed in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict. *Id.* The threshold question is whether the jury's verdict was reasonable, not whether the Court believes it is correct. *Id.* "In assessing the sufficiency of evidence, a reviewing court is not to make determinations concerning the credibility of witnesses." *United States v. Gadison*, 8 F.3d 186, 189 (5th Cir. 1993).

B. The Elements the Government Was Required to Prove

To convict Anderson on Count 1, the government had to prove beyond a reasonable doubt that Anderson knowingly and willfully agreed to join a conspiracy whose unlawful purpose was a corrupt quid pro quo exchange of official action for things of value. The jury instructions required the government to establish that Anderson "knew the unlawful purpose of the

agreement and joined in it willfully, that is, with the intent to further the unlawful purpose." An act is "corruptly done" only if it is done "intentionally with an unlawful purpose."[45]

To convict on Count 2, the government was required to prove that Anderson agreed to use a facility of interstate commerce with the specific intent to promote, manage, establish, or carry on unlawful activity (here, the Mississippi bribery statutes), and thereafter knowingly and willfully promote or carry on such activity.[46] The Travel Act count was entirely dependent on the same corrupt agreement underlying Count 1. If the government failed to establish Anderson's knowing participation in the bribery conspiracy, both verdicts fall.

C. The Evidence Is Legally Insufficient

The most damaging feature of the government's case on the quid pro quo element is that its two primary cooperating witnesses, Gilkey and Grant both disclaimed personal knowledge of any corrupt agreement on Anderson's part. Gilkey testified that he "never heard Cleveland Anderson promise or do anything in exchange for something."[47] Grant's testimony was equally damaging to the government's theory. Grant told the FBI in

---

[45] ROA. 3570-3574.
[46] ROA. 3580-3582.
[47] ROA. 3256: 20-25, 3257: 1-3.

2019, before any cooperation agreement was in place, that he was never present in a room where Anderson tried to solicit a bribe from Warnock.[48] At trial, Grant testified that he had no personal knowledge of Warnock ever giving money directly to Anderson.[49] The government's theory of Anderson's guilt rested on an implicit, corrupt agreement, a claim contradicted by the two men who facilitated the scheme. Similarly, Calvin Harris, Warnock's own representative at CMU meetings, testified that it was Warnock's custom to give things to people without expecting anything in return.[50] This testimony provided an innocent explanation for the benefits Anderson received, undermining any inference concerning Anderson's knowing participation in the bribery scheme.

The government's case invited the jury to infer corrupt/unlawful intent from Anderson's official votes. But Anderson did not have the power to deliver anything of value to Warnock unilaterally. He was one of only five votes on the CMU Board of Commissioners. He had no authority to hire Warnock or to approve payments to his firm. The full Board voted only after a multistep process. Furthermore, when Anderson was appointed to the CMU Board on June 7, 2016, Warnock Engineering had already entered

[48] ROA. 3077: 9-12.
[49] ROA. 3104: 1-9.
[50] ROA. 3309: 6-16.

into a contract with CMU. Therefore, the business relationship that the government characterizes as the object of the bribery scheme was already in place before Anderson became a participant.

Finally, the most powerful evidence against the government's theory is what Anderson did in December 2016. Within six months of his appointment as a commissioner, he led efforts to terminate Warnock as CMU engineer. In response, Warnock sought Anderson's removal from the CMU Board. Warnock had a special meeting called to secure his removal. Grant, at Warnock's direction, pursued Anderson's ouster, and the termination vote passed. This sequence of events is inconsistent with Anderson's participation in a continuing bribery conspiracy. The adversarial breakdown of that relationship, and Warnock’s retaliatory response, corroborate Anderson's non-corrupt intent.

These facts, viewed together and in the light most favorable to the verdict, do not permit a reasonable jury to find beyond a reasonable doubt that Anderson knowingly and willfully joined a conspiracy whose object was a corrupt quid pro quo exchange of official action for things of value. What they establish, at most, is that Anderson was in proximity to a corrupt scheme. He received benefits, cast votes, and associated with people who were bribing and being bribed. But his proximity to these illegal actions is

not participation. Accordingly, the verdicts on Counts 1 and 2 rest on inferences stacked upon inferences, which is insufficient as a matter of law.

Because the evidence was legally insufficient to prove Anderson's knowing participation in a corrupt quid pro quo conspiracy under § 666 or the Travel Act, this Court should reverse the convictions on Counts 1 and 2 and render judgments of acquittal. Alternatively, because the verdicts are against the great weight of the evidence, this Court should vacate and remand for a new trial.

## CONCLUSION

For the foregoing reasons, this Court should reverse the convictions on Counts 1 and 2 and render judgments of acquittal. In the alternative, this Court should vacate the convictions and remand with instructions to accept Anderson's guilty plea to Count 1 and resentence on that count consistent with the plea agreement. In the further alternative, this Court should vacate the sentence and remand for resentencing on concurrent terms consistent with the district court's own findings under 18 U.S.C. § 3553(a) and USSG § 5G1.2(d).

Respectfully submitted,

*/s/ Michael V. Cory, Jr.*

Michael V. Cory, Jr.
Mississippi Bar No. 9868
Danks Miller & Cory, PA

213 S. Lamar St.
Jackson, MS 39201
601.957.3101 (Tel)
601.957.3160 (Fax)

**CERTIFICATE OF SERVICE**

I, Michael V. Cory Jr., hereby certify that on this the 27th day of May, 2026, the Appellant's Brief was served via ECF to counsel for the Plaintiff-Appellee, Assistant U.S. Attorney Samuel P. Goff, at 501 East Court Street, Suite 4.430 Jackson, MS 39201. I further certify that: (1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; (2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1; and (3) the document has been scanned for viruses with the most recent anti-virus program and is free of viruses.

/s/ Michael V. Cory, Jr.
Michael V. Cory, Jr.

**CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the exempted portion in 5th Cir. R. 32.2.7(b)(3), this brief contains 7098 words.

2. This brief has been prepared in proportionally spaced typeface using Word Document in Georgia typeface and 14-point font size.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

/s/ Michael V. Cory, Jr.
Michael V. Cory, Jr.